UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCUS TAYLOR,

           Plaintiff,           Case No. 2:12-cv-229

v.                                        Honorable R. Allan Edgar

D. TENNYSON et al.,

           Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Miron, Hubble, Taskila, Gleson, Livermore, Lindemuth, Heyrman, Deatsman, Rutter, Lesatz, Bauman and the Unknown Assistant Deputy Warden. The Court will serve Claims 2 and 10 against Defendant Tennyson and Claim 7 against Defendant Cobb.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff is incarcerated in the Alger Maximum Correctional Facility. In his *pro se* complaint, he sues the following Alger employees: Resident Unit Officers D. Tennyson, (Unknown) Heyrman, (Unknown) Deatsman and (Unknown) Cobb; Sergeants (Unknown) Miron, (Unknown) Hubble and (Unknown) Livermore; Captain (Unknown) Taskila; Officer (Unknown) Gleson; Resident Unit Manager (Unknown) Lindemuth; Assistant Deputy Warden (Unknown) Rutter; an unnamed Assistant Deputy Warden; Deputy Warden (Unknown) Lesatz; and Warden C. Bauman.

Plaintiff raises ten enumerated "issues" or claims in his complaint concerning the conditions of his confinement in the segregation unit at Alger. Plaintiff also asserts that Defendants retaliated against him on several occasions for filing grievances and making complaints. Additional facts are provided below as necessary to resolve Plaintiff's claims. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Claim 1**

Plaintiff alleges that on August 1, 2011, Defendant Tennyson was delivering law books to prisoners in the segregation unit where Plaintiff was incarcerated. When Tennyson brought Plaintiff the books that he had requested, Plaintiff asked him to inspect the books for damage. Plaintiff was not satisfied with Tennyson's cursory inspection and refused to sign for the books until the books were properly inspected. At that point, Tennyson left without giving the books to Plaintiff.

Plaintiff claims that Tennyson's refusal to give him the law books was a direct violation of Michigan Department of Corrections (MDOC) policy.

Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Consequently, Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). To the extent Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

In so much as Plaintiff's allegations could be construed as asserting a violation of his First Amendment right of access to the courts, Plaintiff fails to state a claim because he does not allege that he suffered an actual injury to pending or contemplated litigation. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Accordingly, Claim #1 against Defendant Tennyson must be dismissed for failure to state a claim.

B. **Claim 2**

Plaintiff alleges that as Tennyson was leaving the wing after refusing to give Plaintiff the law books, Plaintiff told Tennyson that he was going to grieve him. Tennyson responded, "I'll give you something to file a grievance on." (Compl., Page ID#6.) A short while later, Tennyson returned to Plaintiff's cell and told him to cuff-up because he was "going to take [Plaintiff] down to the shower to talk to [him], so [he could] have something to file a grievance on." (Compl., Page ID#6.) When Plaintiff refused, Tennyson told Plaintiff that he was going to take his television. Tennyson left and came back five minutes later with Defendants Miron, Hubble and Gleson. Defendant Miron ordered Plaintiff to surrender his television. Defendant Tennyson then handcuffed Plaintiff and removed him from his cell while Defendant Miron entered the cell and seized the television. Defendant Tennyson wrote a major misconduct report against Plaintiff for disobeying a direct order. According to the misconduct report, Plaintiff refused Tennyson's order to come to the door so they could take him out of the cell and remove his television for alleged disruptive behavior. (08/1011 Misconduct Report, Ex. A, Page ID#14.) Following an administrative hearing, Defendant Taskila found Plaintiff guilty of the offense and sanctioned him to fifteen days loss of privileges. (8/8/11 Misconduct Hr'g Report, Ex. B, Page ID#15.) Plaintiff claims that Tennyson retaliated against him for writing a grievance against him by taking Plaintiff's television and charging him with a false misconduct.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's allegations against Defendant Tennyson are sufficient to state a claim for retaliation. Plaintiff, however, fails to allege sufficient facts to support his claim against Defendants Miron, Hubble and Gleson. Assuming Plaintiff can satisfy the first two requirements for a retaliation claim, Plaintiff does not allege that Miron, Hubble and Gleson were aware of Plaintiff's grievance against Tennyson or any other facts that would support a finding that they intended to retaliate against Plaintiff when they accompanied Defendant Tennyson to his cell and removed his television.

Moreover, Tennyson is the only person alleged to have made a "retaliatory" comment to Plaintiff. As a result, Plaintiff fails to provide support for his assertion that Defendants Miron, Hubble or Gleson acted with a retaliatory motive when they participated in the removal of Plaintiff's television. Consequently, the Court will serve Plaintiff's retaliation claim against Defendant Tennyson, but Claim 2 will be dismissed with regard to Defendants Miron, Hubble and Gleson.

### C. Claim 3

Plaintiff claims that Defendant Taskila conducted the misconduct hearing on the charge brought by Defendant Tennyson. Plaintiff maintained that he did not disobey Tennyson's order to give up his television and told Taskila that the surveillance video would prove his innocence. The hearing was adjourned until the following day so that Taskila could view the video. When the hearing resumed the following day, Taskila found Plaintiff guilty of the offense. (8/8/11 Misconduct Hr'g Report, Ex. B, Page ID#15.) Defendant Lesatz subsequently denied Petitioner's appeal. (9/2/11 Misconduct Appeal, Ex. C, Page ID#16.)

Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995).

Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff was convicted of a Class II misconduct, and, thus, was not deprived of good time or disciplinary credits. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Even if Plaintiff was convicted of a Class I misconduct, he fails to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum

> procedures appropriate under the circumstances and required by the Due Process
> Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, a prisoner has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008). As Plaintiff fails to state a viable due process claim against Defendants Taskila and Lesatz arising from his misconduct conviction, Claim 3 will be dismissed.

### D.   **Claim 4**

On August 17, 2011, Defendant Livermore reviewed Plaintiff's grievances against Defendant Tennyson. During the conversation, Livermore told Plaintiff, "we do things a little

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

different around here, if you don't like it tuff [sic]." (Compl., docket #1, Page ID#8.) Livermore also stated that he would never believe a prisoner over a friend. According to Plaintiff, Livermore's comments demonstrate his bias and willingness to cover-up Defendant Tennyson's improper conduct. Plaintiff further claims that Defendant Lindemuth, who signed-off on Livermore's review, "look[ed] the other way" while Plaintiff's constitutional rights were being violated. (Compl., docket #1, Page ID#8.)

Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, Plaintiffs Livermore and Linemuth cannot be held vicariously liable for the alleged unconstitutional conduct of Defendant Tennyson. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 566 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 566 U.S. at 676. Plaintiff has failed to allege that Defendants Livermore and Lindemuth actively engaged in unconstitutional behavior. Accordingly, he fails to state a claim against them and Claim 4 will be dismissed.

E. **Claims 5 and 6**

Plaintiff alleges in Claim 5 that on August 18, 2011, Defendants Heyrman and Gleson refused to take him out for his shower. When Plaintiff asked why he was being denied a shower, Heyrman responded that it was because Plaintiff had his back window covered. Plaintiff contends that his back window was not covered and Heyrman made the false statement in retaliation for Plaintiff's grievance against Tennyson and his letters to the warden complaining about the mistreatment of prisoners in the segregation unit. Plaintiff tried to ask Defendant Hubble for help when he walked by Plaintiff's cell, but Hubble ignored him. When Plaintiff yelled to Hubble that Officers Heyrman and Gleson were taking his shower for no reason, Hubble allegedly yelled back, "'you'r [sic] back window is covered, I seen [sic] it myself as well." (Compl., Page ID#9.) Plaintiff claims that Hubble's statement was a lie and that he never stopped to check Plaintiff's window. Plaintiff further contends that if his cell window was covered, he would have been charged with a misconduct.

Plaintiff similarly alleges in Claim 6 that on September 2, 2011, Defendants Deatsman and Cobb were in his unit taking prisoners to the shower, but refused to take Plaintiff for his shower. When Plaintiff asked why he was not getting a shower, Defendant Cobb told him to "Griev [sic] it." (Compl., Page ID#9.) When Defendant Hubble came to use the phone by Plaintiff's cell, Plaintiff told him that his officers were refusing to take him to the shower for no reason and asked for help. Plaintiff claims that Hubble did not acknowledge or help him because Plaintiff had been writing grievances on Hubble and his co-workers.

Plaintiff contends that two different sets of officers each denied him a shower on one occasion over a two-week period in retaliation for his grievances and complaints to the warden.

Assuming Plaintiff can show that he was engaged in protected conduct, he cannot satisfy the second requirement for a retaliation claim because the denial of one or two showers is not an adverse action that would deter a person of ordinary firmness from filing a grievance or complaining about his mistreatment in the segregation unit. *See Thaddeus-X*, 175 F.3d at 394. Furthermore, Plaintiff makes nothing more than a conclusory allegation that Defendants Heyrman, Gleson, Deatsman and Cobb were acting in retaliation for the grievance Plaintiff filed against Tennyson. Plaintiff does not make any factual allegations connecting those officers to the grievance he filed against Tennyson. In the absence of supporting factual allegations, a prisoner's conclusory allegations of retaliatory motive fail to state a claim. *Harbin-Bey*, 420 F.3d at 580; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff, therefore fails to state a claim against Defendants Heyrman, Gleson, Deatsman and Cobb.

Likewise, Plaintiff's claim that Hubble did not acknowledge or help him because Plaintiff had been writing grievances on Hubble and his co-workers is far too vague and conclusory to state a claim. Furthermore, Hubble's alleged failure to act or take corrective action is insufficient to state a claim. See *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. Consequently, Plaintiff also fails to state a retaliation claim against Defendant Hubble.

    F. **Claim 7**

Plaintiff alleges that on September 2, 2011, he wrote a grievance against Defendants Deatsman, Cobb and Hubble for denying him a shower. Five days later, Defendant Cobb charged Plaintiff with a false misconduct for disobeying a direct order for refusing to come out of the shower. Plaintiff contends that the misconduct was written in retaliation for the grievance he wrote against

Deatsman, Cobb and Hubble on September 2. According to the misconduct report written by Defendant Cobb, Plaintiff refused to come out of the shower and yelled, "I told you that I'm not coming out until I'm done." (9/7/11 Misconduct Report, Ex. H, Page ID#24.) Plaintiff was found guilty of the offense.

At this stage of the proceedings, Plaintiff's allegations are sufficient to state a claim with regard to Defendant Cobb, who wrote the alleged retaliatory misconduct. Plaintiff, however, fails to allege that Defendants Deatsman and Hubble engaged in any adverse action against him. *See Thaddeus-X*, 175 F.3d at 394. Neither Deatsman nor Hubble issued the misconduct report or were even mentioned in the report. Because Plaintiff fails to allege facts showing that Deatsman and Hubble engaged in adverse action, he fails to state a claim against them. *Id.* Therefore, Claim 7 will be served with regard to Defendant Cobb and dismissed with regard to Defendants Deatsman and Hubble.

G. **Claim 8**

On September 7, 2011, Plaintiff talked to Defendant Lindemuth about being released from segregation to the general population. Lindemuth responded that Plaintiff was still in segregation because he had refused to go to the general population, which Plaintiff claims is false. Plaintiff asserts that he was left in segregation in retaliation for writing grievances on officers working in the segregation unit. Plaintiff alleges that Defendant Lindemuth has a seat on the Security Classification Committee (SCC), along with Defendants Bauman, Lesatz, Rutter and the Unknown ADW. Plaintiff claims that he has written letters to Warden Bauman to inform her about the problems he was experiencing in the segregation unit.

Plaintiff's allegations suggest that Defendant Lindemuth and the other members of the SCC are retaliating against him for filing grievances by keeping him classified to the segregation unit. Once again, Plaintiff's claim of retaliation is wholly conclusory. He has not presented any facts whatsoever to support his conclusion that Defendants Lindemuth, Bauman, Lesatz, Rutter and the Unknown ADW retaliated against him because of his grievances. In the absence of supporting factual allegations, a prisoner's conclusory allegations of retaliatory motive fail to state a claim. *Harbin-Bey*, 420 F.3d at 580; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, he fails to state a claim against them. In addition, Defendant Bauman cannot be held liable for failing to respond to Plaintiff's letters. *See Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. Because Plaintiff fails to state a claim upon which relief may be granted, Claim 8 will be dismissed.

H.     **Claim 9**

Plaintiff alleges that on September 10, 2011, he gave Defendant Deatsman a law library request for some law materials. Plaintiff did not receive the requested materials. Plaintiff believed that Defendant Heyrman, Deatsman and/or Cobb "may be denying my law books to try and stop me from filing grievances and law suites [sic] as well as stopping me from working on my existing law suite [sic]." (Compl., Page ID#10.) Plaintiff further alleges that these officers have been maliciously retaliating against him for exercising his First Amendment rights.

To the extent Plaintiff asserts a violation of his right of access to the courts, he fails to state a claim upon which relief may be granted. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In

order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff does not allege any injury, whatsoever, to pending or contemplated litigation. Consequently, he fails to state an access-to-the-courts claim.

Plaintiff's assertion that Defendants Heyrman, Deatsman and/or Cobb "may be" denying him law books to retaliate against him for exercising his First Amendment rights is nothing more than speculation. Plaintiff alleges only one instance when he gave Defendant Deatsman a law library request and did not get the requested materials. Plaintiff has not alleged sufficient facts to enable the Court to do anything more than speculate that Deatsman was responsible for the fact that Plaintiff did not get the requested legal materials. Plaintiff does not make any specific allegations whatsoever that Defendants Heyrman or Cobb failed to provide him with requested legal materials. Plaintiff simply fails to meet his burden of showing a causal connection between his protected conduct and the alleged adverse action. Accordingly, Claim 9 will be dismissed for failure to state a claim against Defendants Heyrman, Deatsman and Cobb.

I. **Claim 10**

Plaintiff re-alleges that on August 1, 2011, Defendant Tennyson issued a Class II misconduct against him in retaliation for Plaintiff's grievances against him. Plaintiff further claims

that Defendants Miron, Gleson, Hubble, Livermore, Lindemuth, Taskila and Lesatz refused to acknowledge Tennyson's wrongdoing. Plaintiff asserts, "By being put on notice of an inmate['s] rights being violated and the supervisor['s] refusal to resolve the issue makes them liable." (Compl., docket #1, Page ID#10.)

Plaintiff's claim against Tennyson is duplicative of the retaliation claim in Claim 2. The Court concluded above that Plaintiff's claim that Tennyson wrote a false misconduct against him on August 1, 2011 in retaliation for filing a grievance against Tennyson, is sufficient to state a claim. Plaintiff, however, fails to state a claim against Defendants Miron, Gleson, Hubble, Livermore, Lindemuth, Taskila and Lesatz. As previously discussed, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Because Plaintiff fails to allege that Defendants Miron, Gleson, Hubble, Livermore, Lindemuth, Taskila and Lesatz actively engaged in unconstitutional behavior, he fails to state a claim against them. Accordingly, Claim 10 will be served against Defendant Tennyson and dismissed with regard to Defendants Miron, Gleson, Hubble, Livermore, Lindemuth, Taskila and Lesatz.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Miron, Hubble, Taskila, Gleson, Livermore, Lindemuth, Heyrman, Deatsman, Rutter, Lesatz, Bauman and the Unknown Assistant Deputy Warden will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C.

§ 1997e(c).  The Court will serve Claims 2 and 10 against Defendant Tennyson and Claim 7 against Defendant Cobb.

  An Order consistent with this Opinion will be entered.


Dated:  September 13, 2012       */s/ R. Allan Edgar*
                 R. Allan Edgar
                 United States District Judge